**SAFETY CASUALTY CO. v. WALLS.**

No. 1796.

Court of Civil Appeals of Texas. Eastland.
May 20, 1938.

Rehearing Denied June 17, 1938.

880

Conner & Conner, of Eastland, for appellant.

Grisham Bros., of Tyler, and J. A. Lantz, of Austin, for appellee.

FUNDERBURK, Justice.

From a judgment for $3,607.28, wherein George H. Walls, as an employee of Magnolia Petroleum Company, was awarded said sum as compensation insurance against Safety Casualty Company, insurance carrier for said employer, the latter has appealed.

The place of injury was in Comanche County, and after action by the Industrial Accident Board, upon the claim for compensation, and the due filing of suit in said county, the case was transferred by agreement of the parties to Eastland County for trial.

Appellant has briefed propositions under twenty-three several assignments of error. Only two or three will be discussed. The most important questions, as determining the disposition of the appeal, involve consideration of whether good cause was shown for delay covering a period of about two years and two months, in filing

the claim for compensation; and if so, whether the court should have directed a verdict for appellant on the ground that the evidence did not raise an issue of fact that the injury was the cause of the incapacity for which the compensation was claimed.

Although the decision of these questions may call for different judgments, which fact suggests the logical propriety of considering them in the order stated, we deem it advisable to consider the last question first.

In plaintiff's petition it was alleged that "at and prior to the time of" the injury "there were latent tubercular germs in his lungs; that although said latent tubercular condition had existed for many years it had caused him no trouble or discomfort. Plaintiff says that the serious injury to his chest and shoulders caused said tubercular condition to become active and that such active tubercular condition resulted naturally from the injury and without such injury would not have developed * * *." According to these allegations, the same disease which resulted in Walls' incapacity existed long prior to the accident by which he received his injury. Said allegations had the effect of relieving the defendant of the burden of establishing, if it could do so, what would have constituted a complete affirmative defense to plaintiff's cause of action, namely, that the disease which finally resulted in Walls' incapacity existed before the accident of his falling against the ladder, and therefore presumably was not a result of such accident.

We take it to be an established legal proposition that earning capacity, though impaired because of old age or disease, is compensable under the workmen's compensation statutes when same is lost, or further impaired, as the result of accidental injury to an employee in the course of an employment within the purview of said statutes. Traders & Gen. Ins. Co. v. Wright, Tex.Civ.App., 95 S.W. 2d 753; Texas Emp. Ins. Ass'n v. Burnett, Tex.Civ.App., 77 S.W.2d 742; Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72; Guzman v. Maryland Cas. Co., Tex.Sup., 107 S.W.2d 356; Texas Emp. Ins. Ass'n v. Parr, Tex.Com.App., 30 S.W.2d 305; Travelers Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354, 358; Texas Emp. Ins. Ass'n v. Ford, Tex.Civ.App., 93 S.W.2d 227; Zurich General Acc., etc., Co. v. Daffern, 5 Cir., 81 F.2d 179.

Where there has been no previous actual impairment of capacity by reason of disease, age, etc., but because thereof there exists a condition of super normal susceptibility to injury or incapacity from injury, we think the same principle should be held to apply. In fact, of such nature were the situations involved in Travelers Ins. Co. v. Johnson, supra, and Texas Emp. Ins. Ass'n v. Ford, supra. The principle, however, must be applied with due regard to the statutory definition of injury. R.S.1925, Art. 8309, sec. 1, sub. 5. When the word "injury" is used in the statutory sense of "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom", it is not accurate to speak of injury causing disease or disease resulting from injury. A thing cannot, even in part, be caused by, or result from, itself. "In no true sense can a thing be either the result or the cause of itself." Williams v. Safety Cas. Co., Tex.Civ. App., 97 S.W.2d 729, 733. Strictly and accurately speaking, if disease results from, or is caused by "injury" in the sense of that word, as above defined, an incapacity resulting from such disease is not compensable, since, under the law, incapacity caused by disease is compensable only when the disease is itself a part of the injury. It is readily apparent when, in chronological order, "damage or harm to the physical structure of the body" follows an accident and in turn "disease or infection" follows such damage or harm, a far simpler problem of proof is presented than is the case when the same disease which produces the incapacity is admitted or shown to have existed before the accident occurred and therefore necessarily before there was any injury. In the absence of proof that the preexisting disease had completely ceased to operate as a cause of further loss or impairment of capacity, it is difficult for us to see how the essential fact could be proved that the previously existing disease which, following the accident, resulted in incapacity was a part of the injury caused by the accident. What facts could be produced in evidence to favor the inference that but for the accident and its immediate effect of "damage or harm to the physical structure of the body" the preexisting disease would not have subsequently resulted in incapacity, in preference to the in-

ference that the natural course of the disease would have produced such incapacity, if there had been no accident? In Texas Pacific Fidelity & Surety Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050, upon the authorities cited, we had occasion to sanction the legal proposition that (page 1052) "if an inference consistent with the existence of a fact in issue is but equally as valid as an inference of its nonexistence, then the jury may not determine the question. * * * There must be evidence to support the conclusion that the inference of the particular fact is the more reasonable." That principle is believed to be applicable here. We think a just appraisal of the evidence shows the entire absence of any evidence to warrant the inference that plaintiff's admitted tubercular condition was wholly inactive at the time of the accident. It being admitted by the pleadings that prior to the injury plaintiff had had active tuberculosis, and that about July 1, 1935, more than two years after the inception of the injury, the expert, Dr. McKnight, diagnosed his condition as "tuberculosis in a far advanced state" there exists a presumption that such disease had continued from long prior to the injury. With respect to such a presumption there would seem to be no reason for a difference regarding tuberculosis and insanity. As to the latter, it is the recognized rule that when insanity is authentically established, it is presumed to continue until rebuttal evidence is produced, or an occasion arises for the application of a contrary presumption. Rowan v. Hodges, Tex.Civ.App., 175 S.W. 847; Mason v. Rodriguez, 53 Tex.Civ.App. 445, 115 S.W. 868; Herndon v. Vick, 18 Tex.Civ.App. 583, 45 S.W. 852; Gersdorff v. Torres, Tex.Com.App., 293 S.W. 560; National Surety Co. v. Landers, Tex.Civ.App., 235 S.W. 275; West Lumber Co. v. Henderson, Tex.Civ. App., 238 S.W. 710; Billups v. Gallant, Tex.Civ.App., 37 S.W.2d 770; Bryson v. Karslake, Tex.Civ.App., 71 S.W.2d 614. The general principle of which the above is but a special application has been well stated, as follows: "Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time." 22 C.J. p. 86, sec. 28.

The presumption to which plaintiff's own pleadings and evidence thus give rise—that he had active tuberculosis from long prior to his injury—was, of course, rebuttable. We pass over the pleading—there being no challenge to the same—and assume the sufficiency thereof to authorize evidence in rebuttal of such presumption. It is our conclusion, however, that there was no evidence tending to rebut the presumption. The testimony of one physician—Dr. Snow—is supposed to have a bearing upon this point and to be favorable to plaintiff. The whole testimony of this witness, however, was based upon the assumption as a premise that at the time of the accident plaintiff "was strong and healthy." Such assumption included the most vital element in the issue and unsupported by evidence to show an arrested condition of tuberculosis is rendered, we think, of no probative effect. With the fact presumed against him that plaintiff had active tuberculosis at the inception of his injury, the conclusion seems inescapable that there was a total absence of evidence to raise an issue of the fact that but for the accidental injury plaintiff's incapacity from tuberculosis would not have resulted.

We are not to be understood as holding that if plaintiff already had active tuberculosis at the time of his injury, the fact that his subsequent incapacity resulted from tuberculosis would, as a matter of law, show that he could have no right to compensation. On the contrary, the law is recognized to be that recovery of compensation will not be denied "although it may appear that the injury received was aggravated by the effect of some disease existing at the time of the injury or occurring afterwards." Guzman v. Maryland Cas. Co., supra (107 S.W.2d page 357). The present question is not one of law, but of the existence, or not, of evidence to warrant a particular finding. If the preexisting disease was a different disease from that which finally culminated in incapacity, a different problem of proof would be involved. So, perhaps, would be the case if the disease was a different one from tuberculosis, that is, of a different nature. The fact, never to be lost sight of, is that plaintiff had the burden of showing by a preponderance of the evidence that the incapacitating tuberculosis was a part of his accidental injury, which, of course, the tuberculosis he already had at the time of the injury was not. According to plaintiff's testimony it was

"three or four months" after the accident that he noticed a little hacking cough. That was also after he had had a hernia operation. It was not even shown that he had not taken ether in the hernia operation. There was simply no evidence that we can find tending to differentiate disease which was no part of the alleged injury from disease which was part of such injury. Every fact in evidence which may be supposed to indicate that the accident had any influence whatever on the preexisting disease seems equally referable to the natural progress of the disease.

■■■■■ In connection with special issue No. 4, the jury was given a definition of "producing cause" to which the defendant made a number of objections, and to the court's action in overruling same, several propositions are urged. Said issue was: "Do you find from a preponderance of the evidence that plaintiff's said injury, if any, was a producing cause of his condition of incapacity, if any?" To our way of thinking, the use of the word "producing" as part of a term "producing cause" is a redundancy. As we had occasion to observe in Texas & P. Ry. Co. v. Short, Tex.Civ.App., 62 S.W.2d 995, 998, it is a good example of tautology "about on a parity with 'widow woman,' 'tooth dentist,' 'shoe cobbler,' etc." As also held in the same case, the word "cause" as used in said special issue is not a legal term having a meaning different from its ordinary import. The definition complained of was as follows: "The term Producing Cause, as used in this charge, means a cause, which in a natural and continuous sequence, either alone or in conjunction with preexisting bodily condition, brings about the condition of incapacity and, without which cause, such incapacity would not have occurred. There may be more than one producing cause of a person's incapacity." This definition accords with our understanding of the legal principles involved as already expressed and in our opinion was not subject to any of the objections urged. It required the jury to make their finding upon the issue to which it had reference, in recognition of a preexisting tubercular condition and yet only authorized an affirmative answer in case the subsequent incapacity, if any, following the alleged injury would not have resulted but for the injury. Unless the tuberculosis which produced plaintiff's incapacity would not

have existed but for the accident, and the intermediate element of the injury, namely, "damage or harm to the physical structure of the body", then truly the injury would not have been the cause of the incapacity at all. These considerations would seem to reenforce what has already been said to the effect that it was essential in order to enable the jury to distinguish between disease which was not part of the injury and disease, if any, which was part of the injury, that there be evidence to warrant the conclusion that plaintiff's previous tuberculosis had become completely inoperative as a direct cause of the incapacity.

It is, therefore, our conclusion that if the case should not have been dismissed for the lack of a sufficient showing of good cause for delay in filing the claim, the jury should have been instructed to return a verdict for the defendant.

■■■■■ We shall now consider the question of good cause. In our opinion there is always good cause for an employee to delay the filing of a claim for compensation up to the time incapacity or some material impairment of capacity results from the injury. If that time is more than six months after the injury, then, in addition to showing such good cause up to the beginning of incapacity, good cause, necessarily consisting of other elements, must be shown from that time up to the time the claim is filed. Plaintiff alleged that he was totally incapacitated on and after June 23, 1935. He then had good reason to believe he had tuberculosis. His trouble was positively diagnosed as such on July 1, 1935. He filed claim December 12, 1935. On June 23, 1935, and always thereafter, he had all the reason to believe, which any evidence tends to show he ever had, that his incapacity was caused by the accident which happened April 15, 1933. There was no evidence to show that the diagnosis of his disease as tuberculosis on July 1, 1935, in any way affected this last mentioned fact. Unless the fact that plaintiff was sick and naturally much concerned about his health constituted good cause for delay in filing his claim from at least July 1, 1935, to December 12, 1935, then we think there was no evidence of good cause. In New Amsterdam Cas. Co. v. Chamness, Tex. Civ.App., 63 S.W.2d 1058, Judge Hickman, expressing the views of this court, after stating the second ground relied up-

on in that case to constitute good cause as being "that appellee was mentally and physically incapacitated during the interim of the delay to look after the filing of his claim," said, "We have carefully considered the evidence offered in support of the second ground, and have concluded that it affords no support for the allegation. It would serve no purpose to detail all the facts shown by the record with reference to appellee's mental and physical condition during this period, but we think it sufficient to state that the most it discloses is that he worried because of the loss of his eye. Something more than that is required to establish mental and physical incapacity to file a claim for compensation. That state of mind doubtless results from every serious injury, and, if it were recognized as a good cause for not filing a claim within the statutory period of six months, the effect would be to abrogate the statute."

In the instant case we believe the evidence shows no more than in that case. There is no suggestion that appellee could not have employed attorneys at almost any time, or was not just as able mentally and physically to do as he was at the time he did employ such attorneys and made arrangement for the filing of the claim. If it can be said that the allegations of good cause were sufficient, it cannot be said, we think, that the evidence raised an issue of the existence of good cause covering the period from July 1, 1935 up to December 12, 1935, when the claim was filed.

■ This is not a case of which it may be said that no compensable loss or impairment of earning capacity occurred until more than six months from the date of the injury, and which fact alone might constitute good cause for not filing claim for compensation until such loss or impairment of capacity resulted. As a part of the injury plaintiff suffered a hernia from which a temporary disability resulted within thirty days from the date of the injury. He was thereby incapacitated from May 5, 1933 to July 1, 1933. Although plaintiff seems to have waived any claim of compensation based on the hernia element of his injury, it is none the less

certain that he could not rely for good cause upon the fact alone of the delayed subsequent development of incapacity from another and different element of the same injury.

■ A compensable injury consists of elements which in the order of their appearance are: (1) Accident; (2) damage or harm to the physical structure of the body; (3) disease or infection resulting from damage or harm to the physical structure of the body; (4) disability or incapacity and/or death. A compensable injury is to be regarded as a unity and therefore different elements thereof are not the proper subject matter of different claims for compensation. Many authorities may be cited supporting more or less directly this proposition. New Amsterdam Cas. Co. v. Harrington, Tex.Civ.App., 283 S.W. 261; United States F. & G. Co. v. Baker, Tex.Civ.App., 65 S.W.2d 344; Texas Emp. Ins. Ass'n v. Adcock, Tex. Civ.App., 27 S.W.2d 363; Choate v. Hartford Acc. & Ind. Co., Tex.Civ.App., 54 S.W.2d 901, reversed on other point, 126 Tex. 368, 89 S.W.2d 205; Indemnity Ins. Co. v. Harris, Tex.Civ.App., 53 S.W.2d 631; Texas Emp. Ins. Ass'n v. Knouff, Tex.Civ.App., 271 S.W. 633; Texas Ind. Ins. Co. v. Wilson, Tex.Civ.App., 281 S.W. 289; Texas Emp. Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752; Texas Emp. Ins. Ass'n v. Perry, Tex.Civ.App., 35 S. W.2d 1087; Miller v. Texas Emp. Ins. Ass'n, Tex.Civ.App., 63 S.W.2d 883; Texas Ind. Ins. Co. v. White, Tex.Civ. App., 37 S.W.2d 277; Aetna Ins. Co. v. Bulgier, Tex.Civ.App., 19 S.W.2d 821; Maryland Cas. Co. v. Haley, Tex.Civ.App., 29 S.W.2d 458; Consolidated Underwriters v. Hubbard, Tex.Civ.App., 107 S.W.2d 908; Texas Ind. Ins. Co. v. Bridges, Tex. Civ.App., 52 S.W.2d 1075.[1]

For the present we pass over any question of the power to waive one element of an injury and subsequently claim compensation for an incapacity from another manifestation of the same injury, and here call attention to this point only by way of an added reason why we think that in this case as a matter of law there was an absence of a sufficient showing of good cause.

[1] In case of an injury culminating in the death of the employee, the decisions recognize an exception to such rule, and as to a claim of compensation for such death require independent notice, filing of claim and action by the Industrial Accident Board. Traders & General Ins. Co. v. Baldwin, 125 Tex. 577, 84 S.W.2d 439; Maryland Cas. Co. v. Stevens, Tex. Civ.App., 55 S.W.2d 149.

Under these views it will be unnecessary to discuss other questions raised in appellant's brief. We are of the opinion that the trial court erred in refusing to dismiss the case for which reason the judgment should be reversed and the cause dismissed. It is accordingly so ordered.