The STATE of Texas For the Interest and Protection of Patsy Rose ELLENWOOD as a mentally ill person.

No. 8933.

Court of Civil Appeals of Texas, Amarillo.

May 15, 1978.

Jarvis & Biggers, Cecil R. Biggers, Spearman, for appellant.

William L. Rivers, County Atty., Perryton, for appellee.

ROBINSON, Chief Justice.

Patsy Rose Ellenwood appeals from an order committing her to a mental hospital for a period of 90 days for observation and/or treatment. She challenges the sufficiency of the evidence to support jury findings that she is mentally ill and requires observation and/or treatment. She also contends that her statutory and constitutional rights were violated. Affirmed.

On December 6, 1977, Thomas O'Dell filed an application for the temporary hospitalization of his sister, Patsy Rose Ellenwood, pursuant to Section 31 of the Texas Mental Health Code (Tex.Rev.Civ.Stat.Ann. art. 5547–31). On that day, the county judge of Ochiltree County issued an order that (1) required Mrs. Ellenwood to submit to examination by Doctor Waide and Doctor Betty, (2) set a hearing on the application for December 14, 1977, and (3) appointed an attorney ad litem for Mrs. Ellenwood. The certificates prepared by Doctors Waide and Betty each stated that on December 6, 1977, they examined Mrs. Ellenwood and diagnosed her condition as paranoid schizophrenia. Both stated that Mrs. Ellenwood had been their patient for the previous nine years, that she was mentally ill, and that she required observation and treatment in a mental hospital. On February 8, 1978, a hearing was held on the application and Mrs. Ellenwood was committed for temporary hospitalization.

## I.

Mrs. Ellenwood contends that her statutory rights were violated because a hearing on the application for temporary hospitalization was not timely held. Article 5547–33 of the Mental Health Code provides in part: "When an Application for Temporary Hospitalization is filed, the county judge shall set a date for a hearing to be held within fourteen (14) days of the filing of the Application." In the instant case, the county judge set a hearing to be held within

fourteen days, as required by statute. Before the scheduled hearing, counsel for Mrs. Ellenwood requested, and was granted, transfer to the district court and a jury trial. The district judge set and held a hearing on February 8, 1978. Mrs. Ellenwood was at liberty between the time the application was filed and the hearing was held.

 A prompt hearing on the application is for the benefit of both the proposed patient and society. Nevertheless, the purposes of the Mental Health Code should not be defeated by strict insistence on a hearing within fourteen days. When there is good cause for not holding the hearing as set within fourteen days of the filing of the application, the hearing may be postponed and re-scheduled as soon as feasible. *Florence v. Crawford*, 351 S.W.2d 77 (Tex.Civ. App.—Texarkana 1961, no writ). After examining the record before us we conclude that the delay in holding the hearing was the result of the motions filed by Mrs. Ellenwood, and the withdrawal of both her own attorney and the court appointed attorney ad litem. Under these circumstances, we conclude that there was no violation of Mrs. Ellenwood's statutory rights.

## II.

Mrs. Ellenwood challenges the constitutionality of the involuntary temporary hospitalization proceeding. She contends that she was denied due process of law because she was ordered to submit to a medical examination, was not informed of her right to remain silent, and was not represented by counsel during the examinations. Although this point of error is not properly briefed, we will address the contentions because of the significant constitutional issues in civil commitment proceedings.

 Two doctors must examine the proposed patient and certify that the patient is mentally ill and in need of care and/or treatment before a hearing may be had on the application for temporary hospitalization. Tex.Rev.Civ.Stat.Ann. art. 5547–32. This statutory requirement safeguards the rights of the proposed patient as provided by Texas Constitution art. I, § 15–a: "No person shall be committed as a person of unsound mind except on competent medical or psychiatric testimony." The examination also provides a basis for medical opinion, and thus furthers the valid objectives of the Texas Mental Health Code by insuring that involuntary commitments will not be based totally on lay testimony. Requiring the proposed patient to submit to the examination does not offend due process of law.

 The Fifth Amendment protections are not applicable to every aspect of a civil commitment proceeding. The privilege against self incrimination protects any disclosures which the patient may reasonably believe could be used in a criminal prosecution, but does not protect the patient from disclosures which would only tend to reveal mental illness. *Greene v. State*, 537 S.W.2d 100 (Tex.Civ.App.—Houston [1st Dist.], no writ). In a civil commitment proceeding the court is concerned with the present mental condition of the proposed patient rather than any past anti-social activity. To recognize the Fifth Amendment privilege in civil commitment cases would deprive the court of reliable evidence of mental illness. *Moss v. State*, 539 S.W.2d 936 (Tex.Civ.App.—Dallas 1976, no writ).

 Mrs. Ellenwood's analogy between the required medical examinations and the custodial interrogation of an accused criminal is not persuasive. The due process clause of the Fourteenth Amendment does not require the presence of counsel during a medical examination. As previously stated, the examination serves the dual purposes of protecting the constitutional rights of the proposed patient and providing a basis for competent medical testimony. The Mental Health Code permits counsel for the proposed patient to have complete access to all medical records, thereby affording due process of law. Tex.Rev.Civ.Stat.Ann. art. 5547 -33; *Moss v. State, supra.*

## III.

Mrs. Ellenwood challenges the factual, but not the legal sufficiency of the evidence

to support the jury findings. The jury heard testimony from the two examining physicians, appellant and members of appellant's family. The two physicians, who had treated Mrs. Ellenwood for over nine years, testified that it was their opinion that she suffered from paranoid schizophrenia and required observation and treatment. The doctors described the symptoms of paranoid schizophrenia and testified that a person with this illness would be dangerous to others. Appellant's mother and sister-in-law testified concerning violent outbursts by Mrs. Ellenwood and her frequent unfounded complaints of harassment by her family and strangers. We have considered all of the evidence and conclude that under the circumstances of this case, the evidence was factually sufficient to support the jury findings.

Mrs. Ellenwood relies on the case of *Moss v. State, supra,* wherein the court held that the evidence was insufficient to support the jury findings of mental illness and need for treatment, because the two physicians did not provide the factual basis on which their medical opinions were based. The court stated: "A person suspected of mental illness ought not to be deprived of liberty on the basis of expert opinion alone." *Id.* at 949. In *Moss,* only the two doctors and the proposed patient's mother testified. In the instant case, there was extensive lay testimony, which when coupled with the expert medical testimony is sufficient to support the jury findings.

The prehearing examination of the proposed patient cannot take the place of the observation during temporary hospitalization. We do not agree with language in *Moss* to the effect that the doctors must in every instance testify to a factual basis for their opinion. We agree with the holding of *Moss* insofar as it states that a proposed patient should not be temporarily hospitalized solely on the basis of the opinion of two doctors, unsupported by factual information; however, we decline to hold that expert opinion, when coupled with extensive lay testimony such as was heard in the instant case, can never provide the basis for temporary hospitalization.

 We conclude that Mrs. Ellenwood was not deprived of her statutory or constitutional rights in this case. Further, we find that under the facts and circumstances of this case, the evidence was factually sufficient to support the jury findings that Mrs. Ellenwood was mentally ill and required temporary hospitalization for observation and/or treatment. The judgment of the trial court is affirmed.